## ALDRICH *v.* CRAWFORD CHAIR CO.

CORPORATIONS—STOCKHOLDERS' BILL—SUFFICIENCY.

A bill against a corporation, its controlling stockholder, and others, filed by two stockholders, averred that the corporation was formed pursuant to a contract between the complainants and the controlling stockholder under which he was to contribute the entire capital of the company and issue certain shares to complainants to be deposited in escrow until the earnings thereof should pay for it, the contracting parties to constitute the board of directors and officers of the company, to draw certain salaries, and to have certain powers in the management of the affairs of the company; that subsequently a further issue of stock was agreed upon; that later certain stock was issued to the other defendants and at an adjourned annual meeting the other defendants appeared and voted and were elected directors and officers and complainants were deprived of their offices and share in the management of the company, were discharged from their employment, and were unable to collect their salaries. The prayer was that complainants might have their stock delivered up relieved of the contract obligations; that the election be set aside and the old board of directors reinstated; that the stock issued to the other defendants be canceled; that the controlling stockholder render an account; and that complainants have judgment for their damages. There was no averment that a dividend had been or should have been declared; that any contract of hiring was ever made with complainants by the company; that corporate funds or affairs were mismanaged; that the new board of directors had changed the policy of the company; nor that the controlling stockholder did not vote his shares for the new directors or that they were not stockholders. *Held,* that the averments of the bill were too uncertain to warrant equitable intervention; that complainants' remedy for salary, wrongful discharge, and breach of the personal agreement was at law; that the corporation and the controlling stockholder could deal with complainants' stock in escrow only at their peril.

Appeal from Eaton; Smith, J. Submitted January 10, 1908. (Docket No. 36.) Decided May 1, 1908.

Bill by Charles A. Aldrich and Benjamin R. Smith against the Crawford Chair Company, Edward Crawford, Nettie Crawford, Charles H. Crawford, and Cornelius Marius to set aside the issue of certain stock in defendant corporation, and for an accounting. . From an order over-ruling demurrers to the bill, defendants appeal. Re-versed. .

*T. Rogers Lyons* (*Huggett & McPeek*, of counsel), for complainants.

*Carroll, Kirwin & Hollway* (*Cassius Alexander*, of counsel), for defendants.

The substance of the allegations of the bill of complaint may be stated as follows: The defendant corporation was organized April 8, 1905, pursuant to the following agreement:

"Agreement made this April 8th, A. D. 1905, by and between Edward Crawford, of Grand Rapids, Michigan, Benjamin R. Smith and Charles A. Aldrich, of Grand Ledge, Michigan.

"And whereas, the parties to this agreement have to-day formed what is known as the C. Chair Company, a corporation organized under the laws of the State of Michigan, with a capital stock of sixty thousand dollars, which capital stock is to be divided as follows: Edward Crawford, forty thousand dollars of said stock, Benjamin R. Smith retains ten thousand dollars, and Charles A. Aldrich ten thousand dollars, all of which said stock is to be issued upon the books of the said corporation, and is to be deposited in escrow in the vaults of the Michigan Trust Company at Grand Rapids, Mich., for a term of five years, unless all three agree otherwise during said term, and it is mutually agreed between the parties to this agreement that no one or any of them is to sell, transfer or assign any of their stock (except as hereinafter mentioned) for said period of five years, and it is understood that Edward Crawford furnishes the entire capital stock of sixty thousand dollars for said company, and that said Smith and Aldrich are to pay for their stock out of the earnings and dividends of the company, such earnings and divi-

dends are to be applied from year to year on their stock to reduce the amount owing thereon, and it is further understood that at or before the end of the term of five years, if the earnings of the company should be sufficient so that the stock of said Smith and Aldrich is paid in full they have the right to purchase from Crawford, and Crawford agrees to sell to them, nine thousand more to each one of his share of the said stock.

"It is mutually understood between the parties to this agreement that each one is to draw a salary of two thousand dollars per year for the term of five years, which salary is to be paid at the end of each month during the said term or in the same manner as it is paid to the men employed in the shops of the said company.

"It is mutually understood that Benjamin R. Smith is to be president, Charles A. Aldrich vice president, and Edward Crawford secretary and treasurer of the said company, and all three of these are to constitute the board of directors until the annual meeting of said company, which is to be called the first Tuesday in January, 1906. It is mutually understood that suitable by-laws are to be drawn covering the duties of the board of directors and officers of said corporation.

"It is also mutually understood that the general management of the shops, hiring and discharging of the men is to be left to Smith and Aldrich, Crawford to look after the general office work of the corporation. It is also mutually understood that in case of a death of any one of the parties before the end of the term of five years the stock in the name of such member and the remaining members of the corporation have the right to purchase within sixty days from the date of said appraisement said stock at its appraisal value.

"Witness our hands and seals the day and year first above written.

> "EDWARD CRAWFORD.    [L. S.]
> "BENJAMIN R. SMITH.    [L. S.]
> "CHARLES A. ALDRICH.    [L. S.]"

The articles of association were filed April 14th. The stock was apportioned, deposited in escrow, directors elected, and by-laws adopted. At the annual meeting, held on the first Tuesday in January, 1906, the same directors were elected. During the first year complainant Smith was president, Aldrich was vice-president, and

defendant Edward Crawford was secretary and treasurer. In 1906, defendant Edward Crawford was president and treasurer and Aldrich secretary. It is provided in the by-laws that the same person may act as secretary and treasurer. Complainants were experienced men in the business, were the procuring cause of a bonus of $10,000 being paid to the company by the citizens of Grand Ledge, where the business of the company is carried on; have, until the happening of the events complained about, been the active superintendents and managers of the factory and the mechanical part of the business. In July, 1906, an issue of $40,000 of increased capital stock was voted, and it was out of this increased stock that two shares were issued to complainants, they having been told by some one that this was necessary to enable them to vote at stockholders' meetings. A large and profitable business has been secured, the corporation is solvent, prosperous, and has good credit.

For convenience, other material allegations of the bill are divided by subjects.

What the company has done: By direction of Edward Crawford and under his control, it—

"Cunningly and deceitfully with the intent to harass, annoy, cheat, defraud and injure these complainants, did, or caused to be done, many wrong, illegal and inequitable things contrary to the said agreement, to the by-laws of said company, and to the laws of the State of Michigan, all to the great injury and damage of these complainants. The narration of the said wrongful acts and the consequent damage will appear in the next succeeding paragraph."

The next succeeding paragraph of the bill shows no action of the company as such, nor is any set out in the bill except as follows:

"Complainants further show that they are informed and believe that a meeting was called of the directors illegally elected as aforesaid in the city of Grand Rapids on the 27th of February, 1907. That there was elected, or a pretense was made of electing, Edward Crawford

president and treasurer, Nettie Crawford vice president, C. H. Crawford secretary, and that thereupon the said parties pretending to be officers of the said corporation then and there assumed control of the business of the said corporation, have since held the said offices, and controlled the affairs from that day to this; further, that the said meeting if held was illegal, wrongful, that the election, their present positions, their taking possession of the tangible property, their assuming control, their discharging one of these complainants, Charles A. Aldrich, their change of the policy of the corporation, their change of the laborers, their restriction of the authority of Benjamin R. Smith, one of these complainants, and all other acts done by them are wrong, unwarranted, fraudulent, illegal, and greatly injure and defraud these complainants."

It has employed C. H. Crawford, who does not earn the money, at a salary of $2,000 a year and refused to pay complainants the contract salary.

What Edward Crawford has done: He has conceived the idea of getting rid of complainants, forcing them out of the concern before they have earned their shares of stock deposited in escrow pursuant to the original agreement. To this end, he has conducted himself toward them in such a manner in the presence of operatives employed in the factory and others that their authority is disregarded, their discipline destroyed; has overruled their orders; authorized incompetent persons to manage and control the shop, to purchase goods, and instructed them to pay no attention to complainants. He caused three shares of stock to be issued, from or out of what other stock complainants profess to have no knowledge or information, one share each to Nettie, wife of Edward, to C. H. Crawford, and to Cornelius Marius, all without the knowledge or consent of complainants, the fact being first learned by them February 26, 1907, at the adjourned annual meeting, at which these three stockholders appeared and, over the protest of complainants, voted, with the result that complainants were deposed as directors. How many shares were voted by Edward Crawford is not stated. He caused to be issued, using the stationery of

the company, but at what time does not appear, and gave to certain employés of the company, a letter, of which the following is a copy.

" Crawford Chair Company, Manufacturers of
" Dining Room and Suite Chairs,
" Grand Ledge, Mich.
"To Edward Tallman, 20 shares.
"Floyd Morris, 20 shares.
"Charles Rowley, 20 shares.
"Lincoln A. Lemmon, 20.
"W. W. Vanderbilt, 20.
"William Wilson, 20.
"C. M. Maris, 70.
"B. R. Smith, 100.
"C. H. Crawford, 70.
"C. A. Aldrich, 100.
"Edward Crawford, 501.
"Nettie Crawford, 39.
"All this stock is to be in 'escrow' until it is paid for in full from the earnings of the Crawford Chair Company. Any stock in 'escrow' cannot be paid for in any other way only from the earnings of the Crawford Chair Company. Any stockholders leaving the employ of the Crawford Chair Co. before the stock is fully paid for will forfeit the earnings of his stock in 'escrow.' "

He changed the annual report made to the secretary of State March 8, 1906, after it had been signed and verified by the secretary, Aldrich. As originally prepared, it showed as stockholders, Edward Crawford, 400 shares, Benjamin R. Smith, 100 shares, Charles A. Aldrich, 100 shares. As changed, it showed that Edward Crawford owned 598 shares and each of the others one share. Whether the report was again, after these changes, verified, is not stated. He has handled the funds of the company, and has not made statements or accounted therefor, although he has been requested to do so. The effect of all this upon the company is said to be the loss of $10,000 of dividends which otherwise would have been distributed.

Claiming to have been at all times ready and willing to perform the original contract on their part, and to have done so so far as they have been permitted, the particular

grievances of complainants and the relief they ask for is: In March, 1906, defendant Edward Crawford asked the complainants to draw less than $2,000 per annum salary because the defendant company was hard up, and they agreed to accept $3 a day for three months. They are unable to get their back salary. Complainant Aldrich has been discharged as an employé of the company, when or under what circumstances the bill does not set out. They have been damaged by suffering, worry, and financial loss, $25,000. They ask:

(1) That they may have each his 100 shares of stock of the company relieved of the contract stipulations.

(2) That the election of directors of February 27, 1907, be set aside and the old board of directors reinstated.

(3) "That the stock of the said corporation issued illegally and without authority of the board of directors to Edward Crawford 400 shares, to Nettie Crawford 1 share, C. H. Crawford 1 share and Cornelius Marius 1 share, be ordered returned to the treasury of the said corporation and the certificates therefor returned to the stock books and canceled."

(4) That defendant Edward Crawford account for all moneys handled by him.

(5) That complainants have judgment for their damages and costs.

To this bill, the defendants Crawford Chair Company and Edward Crawford joined in demurring, and the defendants Charles H. Crawford, Nettie Crawford, and Cornelius Marius have joined in a separate demurrer. The grounds of demurrer which, on this appeal, we consider (*Kerr* v. *Rupp*, 144 Mich. 269), are that it appears from the bill (1) that complainants have an adequate remedy at law; (2) that the bill does not state a case cognizable in a court of equity.

OSTRANDER, J. (*after stating the facts*). The bill is lacking in certainty of averment. It was filed March 29, 1907, about 30 days after the adjourned stockholders' meeting. Whether the defendant company engaged in the manufacture of goods prior to the completion of its

factory in November, 1906, does not appear. The objectionable personal conduct of Edward Crawford began, it is averred, "from October, 1906." Assuming that it did nothing from April, 1905, to November, 1906, except to build and equip its factory, the bill was filed about five months after manufacturing operations were begun. A by-law of the company provides:

"Dividends of net profits on hand shall be declared as often and at such times as all the directors may decide."

We are not informed whether a dividend was, or should have been, declared. And while another by-law creates an executive committee with power to authorize and make contracts "and to carry on and conduct all ordinary business for the company, fix the compensation of officers and employés," it is by inference only, and that not a necessary one, that it can be determined whether the salaries of complainants were ever fixed by the company, or any continuing contract of hiring was ever made by them and the corporation. No misappropriation of corporate funds is charged, no denial of access to the books of the company, no mismanagement which does not consist in the use of authority with respect to the internal economy which complainants claim belonged to them. If, as may be presumed, Edward Crawford voted his 400 shares of stock at the last annual meeting in favor of directors other than the two complainants, it is immaterial that three other shares were voted by other persons. If those elected directors are, as from the averments of the bill they must be assumed to be, shareholders, they are eligible to the position. We assume that the increase of capital was authorized for the purpose of selling stock. If the new board of directors has changed the policy of the corporation, the change is not set out in the bill. The charges are too vague, uncertain, and indefinite to warrant the interference of a court with the affairs of the defendant corporation, unless for the purpose of amending some wrong to complainants for which defendant Edward Craw-

ford is responsible.    The theory of the pleader seems to be
that there has been a breach of the personal agreement
pursuant to which the corporation was organized, for which
defendant Edward Crawford is responsible, and in his in-
terest.    If the corporation is indebted to complainants for
unpaid salary, the remedy is an action at law by each
complainant against the company.    If complainant Ald-
rich has been wrongfully discharged as an employé by the
machinations of Crawford, his remedy is at law for his
damages.    The court is not asked to compel the corpora-
tion or to compel Crawford to specifically perform the
agreement.    We do not mean to intimate that such per-
formance could be or would be enforced by the court    As
to the stock of the company issued to complainants (we
infer, in the absence of specific allegations, that it was
issued to them and stands in their names, respectively),
and deposited in escrow, it is evident that Edward Craw-
ford and the corporation must deal with it at their peril.
According to the agreement, it is to be paid for by divi-
dends to be applied from year to year.    Whether a court
of equity may compel such application is not now a prac-
tical question.    The bill, aided by all reasonable intend-
ments, does not state a case for equitable interference.

The decree of the court below is reversed, and a decree
will be entered in this court sustaining the demurrers and
remanding the record.    Appellants will recover costs of
both courts.

BLAIR, MONTGOMERY, HOOKER, and MOORE, JJ., con-
curred.